# EXHIBIT A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| PEMBERTON, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: CV-06- 1089 |
| | ) |
| GEORGIA MUTUAL INSURANCE and ZURICH AMERICAN INSURANCE COMPANY | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### STATEMENT OF PARTIES.

1. Plaintiff, Pemberton, Inc., ("Pemberton") is an entity doing business in Montgomery County, Alabama.

2. Defendant, Georgia Mutual Insurance Company ("Georgia Mutual"), is a Georgia corporation doing business in Montgomery County, Alabama.

3. Defendant, Zurich American Insurance Company ("Zurich"), is an Illinois corporation doing business in Montgomery County, Alabama.

## **STATEMENT OF FACTS.**

4. The incident made the basis of this suit occurred in Montgomery County, Alabama.

5. Luis Silva ("Silva") was killed and David Sanchez ("Sanchez") was injured while working for John Jarman d/b/a Jarman Construction on a construction project for a Coosa County school being built in Rockford, Alabama.

6. Jarman Construction and Alaquana Construction, LLC ("Alaquana") were performing work on the project under subcontracts with Pemberton. A copy of the subcontracts are attached as exhibit "A" and incorporated by reference.

7. Article IX of the subcontract required Jarman and Alaquana (as the subcontractors) to defend and indemnify Pemberton (as the general contractor) for any loss or expenses on account of the injury or death to persons (including the subcontractor's employees) arising out of or sustained in connection with the performance of the subcontract.

8. Jarman and Alaquana agreed to reimburse Pemberton for any expenses, including reasonable attorney's fees, incurred by Pemberton as a result of injury or death.

9. The subcontracts further required Jarman and Alaquana to procure liability insurance to insure the liability of the parties (including Pemberton) for any injuries for the subcontractor's employees.

10. Jarman obtained a commercial liability policy from Georgia Mutual. Georgia Mutual refused to defend and indemnify Pemberton and its employees in this case.

11. Alaquana obtained a commercial liability policy from Zurich. Zurich refused to defend and indemnify Pemberton and its employees in this case.

## COUNT I (Breach of Contract).

12. Plaintiff avers that on September 12, 2003 there were in full force and effect polices of insurance issued by defendants, Georgia Mutual and Zurich, providing plaintiff, Pemberton and its employees, with liability coverage. The defendants agreed to provide the plaintiff with protection against claims for bodily injury and death in consideration of the premiums paid to them.

13. Silva was killed and Sanchez was injured as a result of the negligence of Jarman Construction and Alaquana.

3

14. As a proximate cause of the defendants failure to defend and indemnify Pemberton and its employees, Pemberton has been caused to incur the following damages:

    (a) attorney's fees in the defense of the case;

    (b) expert fees and litigation expenses; and,

    (c) exposure to a potentially adverse jury verdict.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severely, in an amount in excess of the jurisdictional limits of this court, to be determined by a jury, which will fairly and adequately compensate the plaintiff for injuries and damages sustained, together with interest from the date of injury, and the cost of this proceeding. Further, plaintiff requests that the jury selected to hear this case render a verdict for plaintiff and against each defendant.

### COUNT II (Bad Faith).

15. Plaintiff hereby reallege all the allegations contained in paragraphs 1-14 as set out in both letter and number.

16. Plaintiff alleges that the above actions by the defendants, Georgia Mutual and Zurich, constitute breach of contract, bad faith and failure to the pay the defense and indemnity of Pemberton and its employees. As a result of the defendants' breach of contract, bad faith and failure to pay, the plaintiffs were caused to suffer substantial monetary damage and other damages.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severely, in an amount in excess of the jurisdictional limits of this court, to be determined by a jury, which will fairly and adequately compensate the plaintiff for injuries and damages sustained, together with interest from the date of injury, and the cost of this proceeding. Plaintiff further requests that the jury selected to hear this case render a verdict for plaintiff and against each defendant, and that it award punitive damages to plaintiff in an amount which will adequately reflect the enormity of the defendants' wrongful acts and which will effectively prevent other similar wrongful acts.

/s/ Larry Bradford
R. Larry Bradford, Attorney for
Defendant, Pemberton, Inc.
Attorney Bar Code: BRA039

5

_____
Shane T. Sears, Attorney for Defendant,
Pemberton, Inc.
Attorney Bar Code: SEA026

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216
(205) 871-7733


**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

_____
Shane T. Sears, Attorney for Defendant,
Pemberton, Inc.
Attorney Bar Code: SEA026


## DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:

Georgia Mutual Insurance Company
c/o C. Spencer Hostetter
6579 Peachtree Industrial Blvd.
Norcross, GA 30092

Zurich American Insurance Company
The Corporation Company
2000 Interstate Park Dr. Ste 204
Montgomery, AL 36109

6

# PEMBERTON, INC.
P.O. Box 210067
Montgomery, Alabama 36121-0067
SUBCONTRACT
— with —

JARMAN CONSTRUCTION                                              Amount $259,378.00

THIS AGREEMENT entered into this 16TH day of _____ August _____, by and between PEMBERTON, INC., Montgomery, Alabama, hereinafter called Contractor, and _____

_____ hereinafter called Subcontractor,

WITNESSETH that, WHEREAS, Contractor has heretofore entered into a General Contract with _____

COOSA COUNTY BOARD OF EDUCATION
_____, hereinafter called the Owner, to furnish all labor and materials and perform all work required for

COOSA COUNTY CONSOLIDATED SCHOOLS
_____

in accordance with the specifications, schedules and drawings     6-3-02
prepared by     BARGANIER DAVIS SIMS
Architect and/or Engineer, which are made a part of said General Contract, and which are now made a part of this subcontract insofar as they apply, and the parties hereto desire to contract with reference to a part of said work.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, it is agreed as follows:

ARTICLE 1 — Subcontractor shall furnish all labor, materials, fuel, equipment, tools, machinery and supplies; perform all work; and do all things necessary to complete the following part or parts of the work of the General Contract in all respects as is therein required of Contractor, and all work incidental thereto, namely:

ALL LABOR TO POUR & FINISH SLAB INCLUDING POUROUS FILL, VISQUEEN & CURING SAW CUTTING, FOOTINGS INCLUDING RE-BAR, FOUNDATION BLOCK FILL. ALL LABOR TO ERECT BUILDING TRUSSES AND ALL FASCIA FRAMING, DECKING, FELT AND RELATED BRACING INCLUDING DRAFTSTOPS. PEMBERTON TO FURNISH BACKHOE JARMAN TO FURNISH CRANE. ALL WORK AS PER PLANS & SPECS & ADDENDUMS YOU MUST HAVE A STATE GENERAL CONTRACTORS LICENSE
ALL OSHA AND SAFETY REQUIREMENTS TO BE MET. ABSOLUTELY ALL TRASH CREATED BY THIS SUB SHALL BE MOVED TO A CENTRAL LOCATION AS DESIGNATED BY PEMBERTON, INC. WORKMAN'S COMPENSATION, LIABILITY INSURANCE IS REQUIRED.


EXHIBIT A

Sheet No. 1 of 4                                                                                      164-03-1
                                                          Subcontract No. _____

ARTICLE II—(a) Contractor shall have the same rights and privileges as against Subcontractor herein as the Owner in the General Contract has against Contractor.

(b) Subcontractor acknowledges that he has read the general contract and is familiar with each and every part of said general contract affecting his operation together with all related plans, specifications, general and special provisions and conditions incidental thereto and by examination has satisfied himself as to the nature and location of the work, the character, quantity and kinds of materials to be encountered and the character, kind and quantity of equipment needed during the prosecution of the work and location, conditions and other matters which can in any manner affect the work under this agreement. Further, said Subcontractor is familiar with respective rights, powers, benefits and liabilities of the Contractor and the Owner thereunder and agrees to comply with and perform all provisions thereof applicable to Subcontractor.

(c) All work shall be done under the direction of the Owner or Owner's representative and his decisions as to the true construction and meaning of the drawings and specifications shall be final, subject to sub-paragraph (e) and Article III (a) below. Subcontractor shall conform to and abide by any additional specifications, drawings or explanations by the Owner to illustrate the work to be done.

(d) Subcontractor shall procure at his own expense all required permits and licenses.

(e) Contractor shall have the right, but not the obligation, to inspect all working drawings, to inspect all work required of the Subcontractor hereunder, and all such working drawings and work shall be subject to approval of the Contractor. Contractor shall have the right, but not the obligation, to inspect equipment of Subcontractor, and the adequacy of such equipment shall be subject to approval of Contractor. It is expressly understood that the approval of the Subcontractor's working drawings and inspection of the Subcontractor's work and equipment is general only, and such approval or inspection will not relieve the Subcontractor from any responsibility whatsoever.

(f) Subcontractor expressly agrees that the provisions of the general conditions in the general contract between the Contractor and the Owner governing Disputes and Appeals shall be applicable to all disputes arising out of or in connection with this subcontract.

ARTICLE III—(a) Subcontractor shall begin work as soon as instructed by Contractor and shall carry on said work promptly, efficiently and at a speed that will not cause delay in the progress of Contractor's work or other branches of the work carried on by other subcontractors. Contractor may, from time to time, reschedule the order of the work to be performed and may require Subcontractor to prosecute, in preference to other parts of the work, such part or parts as Contractor may specify. Contractor may require weekly conferences at the job site. Subcontractor's authorized representative shall attend each conference held while Subcontractor's work is under way and on such other occasions as required by Contractor.

(b) Subcontractor, at Contractor's request and at the time specified in such request, shall submit to Contractor progress, procurement and man-hour completion schedules, satisfactory in form and content to Contractor, and upon Contractor's acceptance of the schedules, shall prosecute the work in accordance therewith, subject to the provisions of Article III (a) above.

(c) Any damages for delay caused by Subcontractor, including actual damages which Contractor sustains or for which Contractor is liable to others, and including any damages, liquidated or otherwise, for which Contractor is liable to Owner, or as results of Subcontractor's failure to comply with progress schedules required by Article III (b) above, shall be deducted by Contractor from the contract sum for said work as liquidated damages and not as a penalty. If such deduction results in an overpayment, Subcontractor shall pay Contractor such overpayment on demand.

(d) Contractor shall not be liable to Subcontractor for delay to Subcontractor's work by the act, neglect or default of the Owner or Owner's representative, or by reason of fire or other casualty, or on account of riots or strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond the Contractor's control, or any circumstance caused or contributed to by any subcontractor or any other party performing a part of the work; but Contractor will cooperate with Subcontractor to enforce any just claim against the Owner or Owner's representative for delay. Contractor shall be reimbursed by Subcontractor for any expense, including attorney's fees, in connection with any claims asserted at the request of Subcontractor.

(e) Should Subcontractor be delayed in his work by Contractor, then Contractor shall owe Subcontractor therefor only an extension of time for completion equal to the delay caused, and then only if written claim for delay is made to Contractor within forty-eight (48) hours from the time of the beginning of the delay.

(f) Subcontractor shall remove from the premises, as often as directed by the Contractor, all rubbish and surplus material which may accumulate from the prosecution of said work, and shall clean up any adjacent work soiled by his workmen and shall leave floors "broom clean." Should Subcontractor fail to do so, Contractor may, at his option perform same at Subcontractor's expense.

ARTICLE IV—(a) Subcontractor shall make all alterations, furnish material for and perform all extra work or omit any work the Owner or Owner's representative may require, and at a reasonable addition to or deduction from the contract price hereinafter set forth and pro rata to the same. NO ALTERATIONS OR CHANGES SHALL BE MADE, HOWEVER, EXCEPT UPON WRITTEN ORDER FROM CONTRACTOR, AND CONTRACTOR SHALL NOT BE HELD LIABLE TO SUBCONTRACTOR FOR ANY EXTRA LABOR, MATERIALS OR EQUIPMENT FURNISHED WITHOUT SUCH WRITTEN ORDER. The amount to be paid by Contractor, or allowed by Subcontractor, as a result of such changes or alterations shall be stated in the such order, if the amount can be agreed upon; but if not, then Subcontractor shall follow the appeal procedure set up in the General Contract between the Owner and Contractor (such appeal to be at Subcontractor's expense); and provided, further, that where the General Contract contains no appeal provisions, then it shall be fixed by arbitration as provided in Article XIII hereinbelow; but, meanwhile, the work shall proceed as directed.

(b) Subcontractor shall submit proposals for alterations or changes in the manner provided in the General Contract, unless instructed otherwise by Contractor.

(c) Subcontractor shall submit all claims for extra costs in the manner provided in the General Contract, through the Contractor for transmittal to the Owner. Any statement herein to the contrary notwithstanding, as to any extra work, in no event shall Contractor be liable to Subcontractor for an amount greater than the amount received by Contractor from Owner for such part of the extra work performed by Subcontractor, less Contractor's normal overhead and profit.

ARTICLE V—Subcontractor shall provide safe and sufficient facilities at all times for inspection of the work by Contractor, Owner, or their duly authorized representatives, and shall, within twenty-four (24) hours after written notice from Contractor, proceed promptly to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the Contractor, Owner or Owner's representative shall condemn or fail to approve, and shall promptly make good all such work and all other work damaged or destroyed in removing or making good said condemned work.

ARTICLE VI—(a) Subcontractor shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly qualified workmen and a sufficient amount of materials and supplies of proper quality to prosecute said work efficiently and promptly, and to maintain progress in accordance with progress schedules provided for in Article III (b) above. If, in the opinion of Contractor, Subcontractor falls behind said schedules, Subcontractor shall take such steps as may be necessary to improve his progress, and Contractor may require him, after having given one week's notice in writing, to increase the number of shifts, to institute or increase overtime operations, to increase his forces and equipment, and to take such other steps as may reasonably be required in order to make the Subcontractor's progress conform to such schedules, all without additional cost to Contractor. If Subcontractor fails to comply with any such requirements, such failure shall be deemed a breach of this agreement and Contractor may, in addition to any other remedies Contractor may have under this agreement, withhold all payments due Subcontractor until Subcontractor's progress conforms to such schedules.

(b) Subcontractor shall promptly pay for all materials purchased, and shall pay all workmen each week, at Contractor's request, shall obtain and furnish Contractor weekly with signed receipts from all workmen showing the date of payment.

Sheet No. 2 of 4

Subcontract No. _____164-03-

amount paid, number of hours paid, days on which said work was performed, classification of the labor so paid and the rate of wages per hour paid at Contractor's request, shall supply Contractor weekly with a reasonable number of copies of payroll, verified by Subcontractor.

(c) The Subcontractor shall provide adequate supervision of the work and shall have a competent foreman or superintendent satisfactory to Contractor on the work at all times during progress, with authority to act for Subcontractor.

(d) Subcontractor shall furnish all temporary heat, power, water, watchmen, ice water and sanitary facilities required for Subcontractor's portion of the work.

(e) Any of the following shall constitute default in all events under this subcontract:
 (1) Failure to provide bond as herein provided,
 (2) Failure to pay payroll when due,
 (3) Failure to commence correction of faulty work within three days after written notice to proceed,
 (4) Failure to properly man the job within five days after written notice,
 (5) Failure to pay any sums due hereunder within ten days after written demand, and
 (6) Failure to perform any other obligations of Subcontractor hereunder.

ARTICLE VII—To secure performance by Subcontractor and any funds expended by Contractor hereunder, Contractor shall have a lien upon all materials, tools, appliances and equipment of Subcontractor on the premises or used in connection with said work.

ARTICLE VIII—(a) Subcontractor shall turn said work over to Contractor in good condition and free and clear of all claims, encumbrances and liens and shall protect and save harmless Contractor and Owner from all claims, encumbrances and liens growing out of the performance of this Subcontract. Any fees or expenses incurred by the Contractor on account of default by the Subcontractor or on account of claims against the Contractor or Subcontractor by third parties arising out of matters covered in this subcontract, shall be chargeable to the Subcontractor, who agrees to pay such reasonable fees and expenses, including reasonable attorneys' fees. Any statement herein to the contrary notwithstanding, Contractor shall have the right, but not the obligation to defend any such claims against the Subcontractor, at the Subcontractor's expense.

(b) Subcontractor shall, as often as required by the Owner or Contractor, furnish a sworn statement showing all parties who furnish labor or materials to Subcontractor, with their names and addresses and the amount due or to become due each. Like statement may be required from any subcontractors of Subcontractor.

(c) Subcontractor agrees to, and does hereby, guarantee his work against all faulty workmanship or defective materials as required in the General Contract, expressed or implied; or if no guarantee is required by the General Contract, then for a period of one year from the date of completion and final acceptance of the entire project by the Owner.

ARTICLE IX—(a) Subcontractor agrees to indemnify, hold and save harmless Contractor against all loss, cost or expenses on account of injury (including death) to persons (including but not limited to the public and agents, servants and employees of said Contractor and Subcontractor) or on account of damage to property occurring in, arising out of, or sustained in connection with the performance of said subcontract. Subcontractor shall defend all suits brought against Contractor (in which connection Subcontractor shall employ lawyers acceptable to Contractor) on account of any such injuries or damage and shall reimburse Contractor for any expenses, including reasonable attorney's fees, sustained by Contractor by reason of such injury or damage. In the event Subcontractor uses any of Contractor's tools, equipment, scaffolds, ladders or temporary facilities, Subcontractor shall hold Contractor harmless from all claims growing out of the use thereof.

(b) Subcontractor shall carry public liability insurance and also such employer's liability or workmen's compensation insurance as may be necessary to insure the liability of the parties hereto for any injuries to Subcontractor's employees, and all insurance required by the law of the place where said work is to be done, and shall furnish Contractor with satisfactory evidence that such insurance has been obtained and paid for and will continue in force until the completion of said work, and if Subcontractor should sublet any of this work to a third party, Subcontractor shall see that said third party shall do likewise.

(c) Subcontractor, as a part of the obligations assumed by him in this subcontract, accepts exclusive liability for all taxes and contributions required of the Contractor or Subcontractor by the Federal Social Security Act and the Unemployment Compensation Law or similar law in any state with respect to the employees of Subcontractor in the performance of the work herein provided for, and agrees to furnish Contractor with suitable written evidence that he has been authorized to accept such liability. Subcontractor further agrees that if he cannot furnish said evidence, or should fail to do so, prior to beginning his work, Contractor may, at his option, pay or reserve for payment said taxes and contributions and deduct the amount paid or reserved from payments due or to become due Subcontractor. Subcontractor agrees to protect Contractor against all liability in respect to said employees under said Act or Law, or otherwise.

(d) Subcontractor accepts exclusive liability for any and all sales tax or use tax which may be assessed against materials, equipment or labor used in his part of the work or which may arise out of this subcontract.

(e) Subcontractor shall, at the time and in the manner provided, abide by and conduct the work hereunder in full compliance with any and all applicable federal, state, local and municipal laws, ordinances and orders, and any and all rules and regulations of governmental boards and bureaus, and shall hold harmless Contractor from any and all liability with respect thereto.

ARTICLE X—All labor used throughout the work shall be acceptable to the Contractor and the Owner, and Subcontractor shall use such labor as will not impede progress of any part of the work under the General Contract, and the Subcontractor's failure to employ such labor as will permit work to be carried on harmoniously and without delay on this project, or on any other project where Contractor is employed, shall give the Contractor the option of terminating this subcontract and proceed in accordance with Article XV.

ARTICLE XI—Subcontractor agrees to indemnify and save harmless Contractor from any and all claims or suits for infringement of patents, or violation of patent rights, by Subcontractor, and further agrees to pay all loss and expense incurred by Contractor by reason of any such claims or suits, including attorney's fees.

ARTICLE XII—Contractor agrees to pay Subcontractor for said work TWO HUNDRED FIFTY NINE THOUSAND THREE HUNDRED SEVENTY EIGHT _____ Dollars, (any exchange shall be borne by Subcontractor), subject to additions and deductions as hereinbefore provided, payable as the work progresses, based on estimates submitted by Subcontractor and approved by Contractor, and subject to receipt by Contractor of payment from the Owner. Contractor may, at his option, retain 5 % of each estimate until final payment and may withhold payment of any estimate until Subcontractor has furnished Contractor with suitable evidence that he has paid in full for all labor, materials and supplies used in the work through the date of the estimate. Final payment shall be made within 60 days after the completion of the work included in this subcontract, written acceptance by the Owner or Owner's representative and full payment therefor by the Owner; except that Contractor may deduct from such final payment any sums due to Contractor from Subcontractor under this subcontract or otherwise.

ARTICLE XIII—If any question of fact shall arise under this contract and there is no provision for settlement in the General Contract, then either party hereto may demand an arbitration in accordance with the rules of the American Arbitration Association then obtaining. The written decision of such arbitration shall be final and binding on both parties hereto and judgment upon the decision may be entered in any court having jurisdiction thereof. Each party shall pay one-half of the expenses of such reference, unless otherwise provided in such decision.

Sheet No. 3 of 4

164-03-1
Subcontract No. _____

4

ARTICLE XIV—Subcontractor shall within ten days from date hereof separate performance and payment bonds, payable to Contractor, each in the sum of $ NA _____, on the forms attached, with surety thereon satisfactory to Contractor, for the faithful performance of this subcontract including changes or modifications thereto without consent of surety, and for the payment of all labor, services, equipment, tools, machinery, equipment and machinery rental, materials and supplies, and all other items of cost or expense incurred by Subcontractor in the prosecution of said work. Premium on said bonds is to be paid by ____NA_____

ARTICLE XV—(a) Should Subcontractor at any time breach this agreement or fail to prosecute the said work with promptness, diligence and efficiency or fail to perform any of the requirements hereof, Contractor may without notice (or if notice be required by Law, then after twenty-four (24) hours' written notice either by registered mail addressed to Subcontractor at SAME AS ABOVE _____, or by posting in some conspicuous place on the job) withhold payment of any estimate and may, in addition to all other rights of the Contractor hereunder, proceed as follows:

1. Provide such materials, supplies, equipment, machinery, tools, labor and supervision as may be necessary to complete said work, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor, or

2. Terminate the employment of Subcontractor, enter upon the premises and take possession, for use in completing the work, of all the materials, supplies, tools, equipment, machinery and appliances of Subcontractor thereon and complete the work, or have same completed by others, and be liable to Subcontractor for no further payment under the agreement until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this subcontract exceeds the expense of Contractor in finishing the work.

(b) If the amount expended by Contractor under "1" above and/or the cost of completing the work under "2" above, exceeds the unpaid balance of subcontract price herein stated, Subcontractor shall pay Contractor such excess upon demand. Further, any election by Contractor to proceed under "1" above shall not preclude a subsequent election to proceed under "2" above.

(c) Should Subcontractor at any time fail to pay for all labor, materials or supplies used by Subcontractor in said work when due, Contractor, at its option, may pay for same and charge to Subcontractor; or Contractor, at its discretion, and with the consent of Subcontractor, may pay at any time claims for labor, materials and supplies used in the work and charge same to Subcontractor.

(d) Should Subcontractor default in any of the provisions of this subcontract and should Contractor employ an attorney to enforce any provision hereof, or to collect damages for breach of the subcontract, or to recover on the bonds mentioned in Article XIV above, Subcontractor and his surety agree to pay Contractor such reasonable attorney's fees and other costs as it may expend therein.

(e) The rights and remedies granted to Contractor under this article and pursuant to the other provisions of this subcontract shall be cumulative and are not intended to be in lieu of any legal right or remedy which Contractor may have against Subcontractor for breach of this subcontract or default hereunder afforded by state or federal law.

ARTICLE XVI—(a) Subcontractor shall not sublet, assign or transfer this subcontract, or any part thereof, without the written consent of Contractor. However, in event of a subletting, assignment or transfer of this subcontract as between the Contractor and Subcontractor herein, the Subcontractor shall remain fully bound to the Contractor under all terms of this agreement, as if there had been no subletting, assignment or transfer of this subcontract or any part thereof.

(b) In all events Subcontractor, in addition to all Subcontractor's other obligations hereunder, shall be liable for and shall indemnify and hold harmless the Contractor from any and all claims of every kind and character which may be made by or for the account of any subcontractor of the Subcontractor herein and from all claims of every character and description which may be made against any subcontractor of the Subcontractor named herein.

ARTICLE XVII—This subcontract contains the entire agreement between the parties and all additions thereto or changes therein shall be in writing and shall not be binding unless same are in writing.

ARTICLE XVIII—The Subcontractor agrees that, if in the event of renegotiation or contract termination, or information relating to renegotiation or contract termination is required by the Owner, it will upon demand of an authorized representative of the Contractor and/or Owner, furnish all information necessary for such renegotiation or contract termination proceedings.

ARTICLE XIX—In the event Subcontractor obtains approval of any material or method of operation which will in any way make changes in, or add to the work, or cost thereof, to be done by the Contractor or any of his other Vendors or Subcontractors, Subcontractor shall be responsible for the additional cost of such changes. Submittals in connection with request for approvals as well as routine specifications and drawings submittals shall clearly identify by specific reference any proposed deviation from contract drawings and specifications.

ARTICLE XX—In the event any options are permitted under the plans and specifications for the furnishing of material and performance of work by this subcontract, Subcontractor may exercise such options only in such manner that a finished job with respect to the finished products or work provided hereunder will be obtained without additional cost to Contractor or any of its other Subcontractors or Vendors, even though items of work may be required under sections of the specifications other than those covered by this subcontract with respect to the products or work furnished hereunder.

ARTICLE XXI—Unless otherwise provided herein, any written notice provided for herein shall be effective at the time of posting in the U. S. Mails, postage prepaid, addressed to the parties at the addresses given herein.

ARTICLE XXII—In the event of any conflict between the terms of this subcontract and the terms of the General Contract with Owner, the terms of this subcontract shall govern.

ARTICLE XXIII—All obligations assumed by Subcontractor under this subcontract shall be at the expense of the Subcontractor.

ARTICLE XXIV—In case the Subcontractor is a firm or corporation, the singular pronoun "he" used herein shall be read accordingly.

ARTICLE XXV—The provisions of the attached Rider and Attachment "A" complement and are made a part of this subcontract.

IN WITNESS WHEREOF, the parties hereto have caused this subcontract to be executed the day and year first above written.

WITNESSES: (One for each party)

JARMAN CONSTRUCTION
(Subcontractor)
By _____
Title _____ Owner

_____
(Witness for Subcontractor)

_Adam R. Pemberton_
(Witness for Contractor)

PEMBERTON, INC. (Contractor)      PEMBERTON, I
By _____
Title _____ President ____

Sheet No. 4 of 4                                                                                                  164-03-1
Subcontract No. _____

# PEMBERTON, INC.
P.O. Box 210067
Montgomery, Alabama 36121-0067
*SUBCONTRACT*
— with —

ALAQUANA CONSTRUCTION, LLC _____ Amount $ SEE QUOTE

THIS AGREEMENT entered into this 6TH day of ____August____, by and between PEMBERTON, INC., Montgomery, Alabama, hereinafter called Contractor, and _____

_____ hereinafter called Subcontractor,

WITNESSETH that, WHEREAS, Contractor has heretofore entered into a General Contract with _____

COOSA COUNTY BOARD OF EDUCATION

_____, hereinafter called the Owner, to furnish all labor and materials and perform all work required for

COOSA COUNTY CONSOLIDATED SCHOOLS

_____

in accordance with the specifications, schedules and drawings ____6-3-02____
prepared by _____BARGANIER DAVIS SIMS_____
Architect and/or Engineer, which are made a part of said General Contract, and which are now made a part of this subcontract insofar as they apply, and the parties hereto desire to contract with reference to a part of said work.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, it is agreed as follows:

ARTICLE 1 — Subcontractor shall furnish all labor, materials, fuel, equipment, tools, machinery and supplies; perform all work; and do all things necessary to complete the following part or parts of the work of the General Contract in all respects as is therein required of Contractor, and all work incidental thereto, namely:

CONTRACT INCLUDES LAYING BLOCK & BRICK, CLEAN-UP AND RUBBING OF BLOCK.
LABOR AS PER FINAL QUOTE. SEE ATTACHED PAYMENT SCHEDULE.

YOU MUST HAVE A STATE GENERAL CONTRACTORS LICENSE
ALL OSHA AND SAFETY REQUIREMENTS TO BE MET. ABSOLUTELY ALL
TRASH CREATED BY THIS SUB SHALL BE MOVED TO A CENTRAL LOCATION
AS DESIGNATED BY PEMBERTON, INC. WORKMAN'S COMPENSATION
LIABILITY INSURANCE IS REQUIRED.

Sheet No. 1 of 4

164-03-2
Subcontract No. _____

ARTICLE XIV—Subcontractor shall within ten days from date hereof separate performance and payment bonds, payable to Contractor, each in the sum of $_____NA_____, on the forms attached, with surety thereon satisfactory to Contractor, for the faithful performance of this subcontract including changes or modifications thereto without consent of surety, and for the payment of all labor, services, equipment, tools, machinery, equipment and machinery rental, materials and supplies, and all other items of cost or expense incurred by Subcontractor in the prosecution of said work. Premium on said bonds is to be paid by _____NA_____

ARTICLE XV—(a) Should Subcontractor at any time breach this agreement or fail to prosecute the said work with promptness, diligence and efficiency or fail to perform any of the requirements hereof, Contractor may without notice (or if notice be required by Law, then after twenty-four (24) hours' written notice either by registered mail addressed to Subcontractor at _____SAME AS ABOVE_____, or by posting in some conspicuous place on the job) withhold payment of any estimate and may, in addition to all other rights of the Contractor hereunder, proceed as follows:

1. Provide such materials, supplies, equipment, machinery, tools, labor and supervision as may be necessary to complete said work, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor, or

2. Terminate the employment of Subcontractor, enter upon the premises and take possession, for use in completing the work, of all the materials, supplies, tools, equipment, machinery and appliances of Subcontractor thereon and complete the work, or have same completed by others, and be liable to Subcontractor for no further payment under the agreement until final payment is due, and then only if and to the extent that the unpaid balance of the amount to be paid under this subcontract exceeds the expense of Contractor in finishing the work.

(b) If the amount expended by Contractor under "1" above and/or the cost of completing the work under "2" above, exceeds the unpaid balance of subcontract price herein stated, Subcontractor shall pay Contractor such excess upon demand. Further, any election by Contractor to proceed under "1" above shall not preclude a subsequent election to proceed under "2" above.

(c) Should Subcontractor at any time fail to pay for all labor, materials or supplies used by Subcontractor in said work when due, Contractor, at its option, may pay for same and charge to Subcontractor; or Contractor, at its discretion, and with the consent of Subcontractor, may pay at any time claims for labor, materials and supplies used in the work and charge same to Subcontractor.

(d) Should Subcontractor default in any of the provisions of this subcontract and should Contractor employ an attorney to enforce any provision hereof, or to collect damages for breach of the subcontract, or to recover on the bonds mentioned in Article XIV above, Subcontractor and his surety agree to pay Contractor such reasonable attorney's fees and other costs as it may expend therein.

(e) The rights and remedies granted to Contractor under this article and pursuant to the other provisions of this subcontract shall be cumulative and are not intended to be in lieu of any legal right or remedy which Contractor may have against Subcontractor for breach of this subcontract or default hereunder afforded by state or federal law.

ARTICLE XVI—(a) Subcontractor shall not sublet, assign or transfer this subcontract, or any part thereof, without the written consent of Contractor. However, in event of a subletting, assignment or transfer of this subcontract as between the Contractor and Subcontractor herein, the Subcontractor shall remain fully bound to the Contractor under all terms of this agreement, as if there had been no subletting, assignment or transfer of this subcontract or any part thereof.

(b) In all events Subcontractor, in addition to all Subcontractor's other obligations hereunder, shall be liable for and shall indemnify and hold harmless the Contractor from any and all claims of every kind and character which may be made by or for the account of any subcontractor of the Subcontractor herein and from all claims of every character and description which may be made against any subcontractor of the Subcontractor named herein.

ARTICLE XVII—This subcontract contains the entire agreement between the parties and all additions thereto or changes therein shall be in writing and shall not be binding unless same are in writing.

ARTICLE XVIII—The Subcontractor agrees that, if in the event of renegotiation or contract termination, or information relating to renegotiation or contract termination is required by the Owner, it will upon demand of an authorized representative of the Contractor and/or Owner, furnish all information necessary for such renegotiation or contract termination proceedings.

ARTICLE XIX—In the event Subcontractor obtains approval of any material or method of operation which will in any way make changes in, or add to the work, or cost thereof, to be done by the Contractor or any of his other Vendors or Subcontractors, Subcontractor shall be responsible for the additional cost of such changes. Submittals in connection with request for approvals as well as routine specifications and drawings submittals shall clearly identify by specific reference any proposed deviation from contract drawings and specifications.

ARTICLE XX—In the event any options are permitted under the plans and specifications for the furnishing of materials and performance of work by this subcontract, Subcontractor may exercise such options only in such manner that a finished job with respect to the finished products or work provided hereunder will be obtained without additional cost to Contractor or any of its other Subcontractors or Vendors, even though items of work may be required under sections of the specifications other than those covered by this subcontract with respect to the products or work furnished hereunder.

ARTICLE XXI—Unless otherwise provided herein, any written notice provided for herein shall be effective at the time of posting in the U. S. Mails, postage prepaid, addressed to the parties at the addresses given herein.

ARTICLE XXII—In the event of any conflict between the terms of this subcontract and the terms of the General Contract with Owner, the terms of this subcontract shall govern.

ARTICLE XXIII—All obligations assumed by Subcontractor under this subcontract shall be at the expense of the Subcontractor.

ARTICLE XXIV—In case the Subcontractor is a firm or corporation, the singular pronoun "he" used herein shall be read accordingly.

ARTICLE XXV—The provisions of the attached Rider and Attachment "A" complement and are made a part of this subcontract.

IN WITNESS WHEREOF, the parties hereto have caused this subcontract to be executed the day and year first above written

ALAQUANA CONSTRUCTION, LLC

WITNESSES: (One for each party)

_____ (Witness for Subcontractor)

(Subcontractor)
By _____
Title _____

_Allyson Andrews_ (Witness for Contractor)

PEMBERTON, INC. (Contractor)          PEMBERTON, INC.
By _____
Title _____

Sheet No. 4 of 4

Subcontract No. _____

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| PEMBERTON, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: CV-06- 1089 |
| ) | |
| GEORGIA MUTUAL ) | |
| INSURANCE and ZURICH ) | |
| AMERICAN INSURANCE ) | |
| COMPANY ) | |
| ) | |
| Defendants. ) | |

FILED 2006 APR 17 PM 1:0[?] CIRCUIT COURT OF MONTGOMERY CO[?]

## SUMMONS

This service by certified mail of this Summons is initiated upon the written request of Plaintiff's attorney pursuant to Rule 4(c)(7) and 4.2 (b)(1) of the Alabama Rules of Civil Procedure.

NOTICE TO:    Georgia Mutual Insurance Company
c/o C. Spencer Hostetter
6579 Peachtree Industrial Blvd.
Norcross, GA 30092

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to Shane T. Sears, Esq., Bradford & Sears, P.C, 2020 Canyon Road, Suite 100, Birmingham, Alabama 35216.

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY(30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT, AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_Melissa Rittenour_
CLERK OF THE COURT

DATED: __05/01/06__